**Wallace WEICHERDING,**
**Plaintiff–Appellant,**

**v.**

**David RIEGEL, Kenneth P. Dobucki**
**and Howard A. Peters, III,**
**Defendants–Appellees.**

**No. 97–3991.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1998.

Decided Nov. 6, 1998.

John H. Otto (argued), Zimmerly, Gadau, Selin & Otto, Champaign, IL, for Plaintiff–Appellant.

Marcia L. McCormick (argued), Office of Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellees.

Before CUDAHY, MANION and EVANS, Circuit Judges.

MANION, Circuit Judge.

While a sergeant at an Illinois state prison, Wallace Weicherding promoted and held a Ku Klux Klan rally. The prison terminated him for conduct unbecoming an officer. Weicherding then sued the prison's warden

and others, claiming that his First Amendment rights were violated. The district court granted summary judgment to the defendants. We affirm.

## I.

The Illinois Department of Corrections hired Wallace Weicherding to work as a prison guard in 1980, and soon thereafter, he began working at the Graham Correctional Center. Graham is a medium security facility, housing about 1,500 inmates, over 60% of whom are black or Hispanic, and approximately 60% of whom have been convicted of violent felonies. By 1993, Weicherding had advanced to the position of sergeant at Graham.

In August or September, 1993, Weicherding appeared on a local television newscast promoting a rally of the Ku Klux Klan to be held on his property on September 18, 1993. During this broadcast, he was identified as a prison guard at an Illinois prison. As inmates at Graham have access to television and newspapers, word of Weicherding's rally quickly spread through the prison, and Kenneth Dobucki, the prison warden at Graham, responded immediately by suspending Weicherding. He also ordered an investigation of Weicherding's involvement with the Ku Klux Klan and his conduct at the prison.

The results of this investigation were summarized in an investigative report. Specifically, the report concluded that Weicherding used hand signals associated with the Ku Klux Klan, and phrases such as "weiss macht" (German for "white power"), hundreds of times while at Graham. Weicherding also promoted his rally within Graham by distributing a flyer and telling other employees about it. The flyer stated that the National Director of the Knights of the Ku Klux Klan, Thomas Robb, would speak at the rally, and that a cross would be ignited at dark. The flyer further noted that the rally would be "sponsored by the Knights of the Ku Klux

Klan/P.O. Box 2222/Harnson, Arkansas."[1] The investigation also revealed that Weicherding had worn a watch with an Aryan Nation flag on its face, and discussed topics relating to the Aryan Nation with inmates.[2]

On the basis on this report, Assistant Warden David Riegel referred Weicherding to the employee review officer for a hearing on the charge that Weicherding engaged in conduct unbecoming an officer. The hearing officer accepted most of the conclusions of the investigative report. He also made some additional findings, including that Weicherding had a bumper sticker on his car which read "White Pride/Worldwide."

Based on the evidence that Weicherding had promoted white supremacist views and Ku Klux Klan activities within the prison and had publicized his support of the Ku Klux Klan while identified as an employee of the Illinois Department of Corrections, the hearing officer found that Weicherding had engaged in conduct unbecoming an officer[3] and recommended termination. Dobucki agreed with the recommendation, and in November, 1993, Dobucki terminated Weicherding's employment. Weicherding then sued, claiming that his termination violated his right to association protected by the First Amendment. After discovery, the district court granted the defendants summary judgment, holding that the defendants did not violate clearly established law when they terminated Weicherding for his association with white supremacist organizations.

Summary judgment, however, was hardly the low point of Weicherding's saga. Shortly before oral argument in this case, Weicherding was convicted of conspiracy to possess and manufacture illegal firearms and destructive devices, as well as possession of a machine gun. *United States v. Weicherding*, Criminal No. 98–CR–30035–PER (S.D.Ill. August 31, 1998). While he presumably is now ineligible to return to his employment as

---

1. Weicherding disputes much of the information contained in the investigative report, including his use of hand signals and white supremacist phrases. He moved to have the report stricken as hearsay, but the district court, noting that the report was not presented for the truth of matter asserted, denied the motion.

2. The Aryan Nation is a white supremacist gang inside Graham and other prisons. It also has members outside of prison.

3. Riegel testified at his deposition that conduct unbecoming an officer includes conduct which impairs the operations or brings discredit to the Graham Correctional Center.

a prison sergeant, remedies such as back pay and attorneys' fees are still available, and thus this case is not moot. *See, e.g., Dehainaut v. Pena,* 32 F.3d 1066, 1070 n. 2 (7th Cir.1994). However, the parties failed to apprise us of this criminal proceeding; we caution counsel that such information must be shared with the court because of its potentially dispositive nature. *See, e.g., Arizonans for Official English v. Arizona,* 520 U.S. 43, 117 S.Ct. 1055, 1069 n. 23, 137 L.Ed.2d 170 (1997) ("It is the duty of counsel to bring to the federal tribunal's attention, '*without delay,*' facts that may raise a question of mootness.") (emphasis in original) (citation omitted).

## II.

Weicherding challenges the district court's grant of summary judgment on two grounds. First, he contends that the district court improperly accepted the facts as reasonably found by the defendants prior to Weicherding's termination. Second, he argues that the conclusions reached by the defendants (and adopted by the district court) were not supported by evidence.

■ Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review a grant of summary judgment *de novo.* The district court initially decided this case on the grounds of qualified immunity, but we choose to bypass the qualified immunity inquiry and proceed to the merits. *Cf. Griffin v. City of Milwaukee,* 74 F.3d 824, 827 (7th Cir.1996) ("[Q]ualified im-

munity would not be relevant unless the evidence supported Griffin's claims ... therefore [we] address the merits of Griffin's claims in this opinion.").

■ First Amendment claims asserted by public employees are analyzed under a two-step test. The first step involves whether the employee's speech or actions address a matter of public concern, or are otherwise protected under the First Amendment. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In this case, the parties agree that Weicherding's association and speech with the Ku Klux Klan addressed a matter of public concern and triggered First Amendment protection.[4]

■ The second step is to balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Among the factors we consider in evaluating this balance are the effect of Weicherding's conduct on the orderly maintenance and efficiency of the state's facility; the effect of Weicherding's constitutionally protected activity on his ability to perform his duties; the nature of Weicherding's employment, including whether his position is one of loyalty or confidence; and the time, place, and manner of Weicherding's speech or activity. *See, e.g., Wright v. Illinois Dept. of Children & Family Servs.,* 40 F.3d 1492, 1502 (7th Cir. 1994). The district court found that there was no material issue of fact with regard to this balancing test, and concluded that the balancing test weighed heavily in favor of the defendants.

■ Weicherding objects to the district court's reliance on the investigation done by the defendants. At oral argument, he complained that "the state is taking the position that the only thing that is outcome-determi-

---

4. In *Balton v. City of Milwaukee,* 133 F.3d 1036, 1040 (7th Cir.1998), we questioned whether the public concern test should be applied to First Amendment association claims, because most private associations do not implicate any public concern, and thus, this test may fail to give

proper weight to an individual's interest in private associations. We need not address this issue in this case because the defendants have agreed that Weicherding's association with the Ku Klux Klan implicates a matter of public concern.

native in this case are the beliefs of the employer and the reasonableness of their beliefs." In contrast, Weicherding asserts that the district court was required to disregard (as inadmissible hearsay) the investigative report prepared and relied on by the defendants. The Supreme Court, faced with this same issue, held that the district court should look to the facts as reasonably found by the employer. *Waters v. Churchill,* 511 U.S. 661, 675–77, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality).[5] The Court reasoned that *de novo* review of employment decisions by courts would hamper the efficiency of government decisionmaking, because then, government officials would have to consider what would be admissible under the Federal Rules of Evidence. It concluded that "employer decisionmaking will not be unduly burdened by having courts look to the facts as the employer *reasonably* found them to be." *Id.* at 677, 114 S.Ct. 1878 (emphasis in original). Thus, we look to the facts as reasonably found by the defendants at the time Weicherding was terminated.

■ The *Pickering* balancing test, as applied to the facts found by the defendants, weighs heavily in favor of the defendants. As Warden Dobucki stated in his affidavit, Graham has a racially charged environment, and avoiding racially motivated violence is essential to the efficient and safe operations of Graham. If Graham were perceived by the inmate population and staff to tolerate a supporter of the Ku Klux Klan, the perception of fairness by prison administrators would be impaired and racial tensions within the prison would be exacerbated. This would lead not only to increased danger to the staff, but also could serve to incite violence among inmates linked to white supremacist groups. Dobucki further testified that Weicherding himself would be at risk; as an identified supporter of the Ku Klux Klan, he would be a target for racially motivated violence and retribution. Weicherding's position as sergeant, an intermediate

management position at Graham, also weighs in favor of the defendants, because managers set an example for the subordinate employees (and in this case, inmates), and also because the views of managers are more likely to be attributed to the institution itself.[6] We also note that Weicherding spoke to the television media (local newscasts) in promoting the rally, and during these newscasts, Weicherding was identified as an employee of the Illinois Department of Corrections. Under these circumstances, the state's interests in maintaining safety and avoiding racial violence at Graham outweighs Weicherding's interests in associating with and promoting the Ku Klux Klan; we see no unconstitutional activity by the defendants.

Weicherding challenges the reasonableness of the defendants' (and thus, the district court's) fact-finding. For example, Weicherding asserts that the record does not support the conclusion that a prison guard's association with the Ku Klux Klan endangers staff and inmates. In support of this point, he notes that in the two months between his public announcements and his discharge, no racially motivated violent attacks or disruptions occurred. While this is true, it hardly proves anything; Dobucki suspended Weicherding only a few days after the local newscasts were aired, and this suspension continued until he was terminated. Furthermore, Dobucki need not wait until a riot breaks out before acting to quell a dangerous situation. The Supreme Court has "consistently given greater deference to government predictions of harm" when the government acts as an employer instead of as a sovereign, and has "given substantial weight to government employers' reasonable predictions of disruption, even where the speech involved a matter of public concern...." *Waters,* 511 U.S. at 673, 114 S.Ct. 1878. Even *Connick* notes that the government need not "allow events to unfold to the extent that the disruption of the office and the destruction of working

---

**5.** Although a plurality, this is the opinion of the Court under the approach adopted in *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).

**6.** But given the sparse record regarding Weicherding's position and responsibilities within Graham, we have no basis on which to conclude that

Weicherding could be fired merely for not sharing the defendants' political views. *Cf. Upton v. Thompson,* 930 F.2d 1209, 1213 (7th Cir.1991) ("[T]here is a range of government positions for which the propriety of patronage firing has depended largely on the courts' juggling of competing constitutional and political values. The results have not been consistent.").

**1144**

relationships is manifest before taking action." *Connick*, 461 U.S. at 152, 103 S.Ct. 1684. Thus, we do not conclude that the absence of an actual disruption renders Dobucki's prediction of disruption unreasonable. Additionally, we note that Weicherding has presented no other evidence suggesting that Dobucki's view is unreasonable. He does not challenge the facts that the majority of the prison's population is black or Hispanic, that prison gangs are generally composed of only members of one race, or that Graham has a racially charged environment.

In short, we are required to accept the government employer's fact-finding efforts, made after a reasonable inquiry and supported by evidence obtained in that investigation. In light of this fact-finding, the defendants reasonably concluded that the interests of safety, promoted by avoiding racial violence at Graham, outweighed Weicherding's interest in protected speech and association. Thus, there was no constitutional violation, and the defendants were entitled to summary judgment.

AFFIRMED.