Delores **FORTENBERRY**, Plaintiff,

v.

**BOARD OF SCHOOL TRUSTEES, School City of East Chicago, Indiana, Doloris Lakich, Connie Manous, George Manous, and John Flores, Defendants.**

**No. 2:98 CV 0628 AS.**

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 28, 2000.

Bradley Hilbert, Gary, IN, for plaintiff.

Richard J. Lesniak, Sr., William M. Murakowski, Lesniak and Associates, East Chicago, IN, for defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

On or about December 17, 1998, this plaintiff, Delores B. Fortenberry, appearing by counsel filed a complaint in this case purporting to state a claim under the Civil Rights Act of 1964, Title VII and the Civil Rights Act of 1991, now cited as 42 U.S.C. § 1981(a). Apparently, also claims are made, initially at least, under 42 U.S.C. §§ 1981, 1983, 1985, and 1988.[1] This cause is currently before the Court on Defendants' Motion for Summary Judgment filed February 1, 2000. Defendants also filed a Motion to Dismiss Plaintiff's Claim of Age Discrimination Pursuant to Federal Rule of Civil Procedure 12(h)(3) on May 8, 2000, and a Motion to Suppress Deposition Testimony of George Manous on September 18, 2000. The Plaintiff, an African American female in her 60's, alleges that she was discriminated against by the Defendants when she was passed over for a promotion to the position of Vice Principal of Central High School in favor of a twenty-eight year old white male who, as it turned out, did not have the required number of years of teaching experience to qualify for the position.

The Court has considered all the submissions of the parties, including supplemental briefs and testimony at oral arguments, and now rules as follows. Defendants' Motion to Dismiss Plaintiff's Age Claim filed on May 8 and Defendants Motion to Suppress filed on September 18, 2000 are hereby **DENIED,** but the Defendants' Motion for Summary Judgment filed on February 1, 2000 is hereby **GRANTED,** for the reasons set forth in the opinion below.

### I. JURISDICTION

Summary judgment was requested by the defendants under Rule 56 of the Federal Rules of Civil Procedure, and this Court has jurisdiction under Title 28 U.S.C. §§ 1331 and 1343(3). Jurisdiction is also premised upon 42 U.S.C. Section 2000(e), including the 1991 Amendments.

### II. RELEVANT FACTS

This plaintiff has been a public school teacher since 1968 and was appointed to the position of Dean at Central High School in 1989. Def.s' Mem. in Supp. at 3. She remains a Dean as far as the papers in this case disclose. *Id.* In 1996, one of the

---

1. This case was reassigned to this judge on January 11, 1999.

three positions of Vice Principal at Central High School became available when Doloris Lakich, a Caucasian female in her "late 50's", was promoted from Vice Principal to Principal at Central High School. *Id.* As one of the Vice Principals, Lakich had previously served as the Plaintiff's supervisor for some two or three years before 1996. *Id.* The vacant Vice Principal job was posted pursuant to the collective bargaining agreement, and six individuals, including Fortenberry, applied. *Id.* An administrative group conducted interviews and made a recommendation to the Board of Trustees that Kevin Myers be appointed to the vacant position of Vice Principal. *Id.*

The administrative group that conducted the interviews was composed of five individuals: 1) Charles Carter, an African American male approximately 63 years of age and then Director of Pupil Services; 2) Raymond Scott, an African American male approximately 63 years of age and a Vice Principal at Central High School; 3) Juan Anaya, an Hispanic male approximately 48 years old, also a Vice Principal at Central High School; 4) Doloris Lakich, the new Principal of Central High School; and 5) Connie Manous, a Caucasian female approximately 58 years of age, then Director of Special Education. Def.s' Mem. in Supp. at 3. After conducting interviews with the applicants, this administrative group met and discussed the strengths and weaknesses of each applicant, providing input to Doloris Lakich, who used this information to decide which applicant to recommend to the Superintendent and School Board of the School City of East Chicago. *Id.* at 4. At this time, the Superintendent appears to have been Luis Gonzales, an Hispanic male approximately 50 years old. Addendum to G. Manous Aff.

The final responsibility for filling the vacant Vice Principal position rested with the Board of Trustees. Def.s' Mem. in Supp. at 4. At that time, the Board of Trustees had five members: 1) Elaine Kisisel, Ph.D. in Education, Caucasian female in her 50's; 2) Henry Gillis, African American male in his 60's and retired Principal of West Side Jr. High School in East Chicago; 3) Norman D. Comer, Ph.D. in Education, African American male in his 50's and retired School City Superintendent; 4) Ramon Colón, Hispanic male in his 60's, retired supervisor for Inland Steel and School Trustee for over 20 years; and 5) Fernando Trevino, Hispanic male in his 30's and an engineer at Amoco. *Id.* This Board of Trustees approved the appointment of Kevin Myers, a 28 year old Caucasian male and a former special education teacher, to the position of Vice Principal upon the recommendation of the Superintendent and the administration. *Id.*

Connie Manous, Director of Special Education, noted in her affidavit that this Vice Principal worked closely with the Special Education Department. Affidavit of Connie Manous at 2. Therefore, knowledge of the Individuals With Disabilities Act of 1997 and Section 504 of the Rehabilitation Act of 1973, as well as Indiana Article 7, was needed for the position. *Id.*

Fortenberry retained her position as one of the Deans at Central High School. *Id.* Soon after the appointment, on August 28, 1996, Fortenberry filed a grievance claiming a violation of the Collective Bargaining Agreement and of her rights when she was not selected for the position of Vice Principal at Central High School. *Id.* After hearing grievance presentations, the Board determined that Fortenberry's contract rights were not violated and that the best candidate had been selected for the position. *Id.* A formal answer was sent on October 3, 1996 by George Manous, who was designated to do so by the Superintendent. *Id.*

Next, the grievance was submitted to an Arbitrator for a binding decision. *Id.* The arbitrator determined that Fortenberry's contract rights were violated because Kevin Myers did not meet the criteria as posted for the vacant position in that he lacked the five years of teaching posted as a requirement, and also necessary to get an Administrative license. *Id.*, see also Def.'s Ex. 5, Award of Arbitrator. However, the arbitrator further held that there was no hard proof to support Fortenberry's claim of discrimination, therefore, no monetary award would be ordered. *Id.* The arbitrator determined that the appropriate remedy was re-posting of the position within a reasonable time so the school corporation could hire a new Vice Principal for Central High School. *Id.* Fortenberry and Meyers both reapplied for the Vice Principal position at Central High School, as did Wesley Bennett, an African American male in his 40's currently serving as Principal of Block Junior High School in East Chicago. *Id.* Again, interviews were conducted and a recommendation made to the Board and on May 6, 1998, Wesley Bennett was appointed to the position of Vice Principal of Central High School. Pl.'s Ex. 31. This time, Fortenberry did not file grievance or claim of discrimination, however, this case was filed as indicated on or about December 17, 1998.

When the Indiana Professional Standards Board became aware that Myers had been issued an Administrator's license but lacked the required five years of teaching experience, the Board responded with a letter dated October 3, 1997 acknowledging that they had made a mistake, but that their usual policy was not to punish the individual. Pl.'s Ex. 25. The Board stated that the usual practice is to allow an individual to keep a mistakenly issued license with the condition that any deficiencies must be cured before the license can be renewed in five years. *Id.* Kevin Myers

was reassigned temporarily to the vacant position of Principal of Block Jr. High School. Def.s' Mem. in Supp. at 5. Finally, it appears that the Indiana Board of Professional Standards also made a mistake when it issued Meyers his elementary license because the license included information that he was not required to do an internship when in fact he was. Pl.'s Ex. 35. Both deficiencies were corrected by Meyers, with the assistance of Connie Manous, Director of Special Education, as soon as he became aware of them. Pl.'s Ex. 36. Meyers continued in the position of Principal of Block Jr. High School. *Id.*

### III. PROCEDURAL HISTORY

This is not a class action but rather an action by a single African American female who purports to make claims for racial, gender and age discrimination because she was not awarded promotion from Dean to Vice Principal at East Chicago Central High School. This case was reassigned by the Chief Judge of this Circuit to the undersigned Judge on January 11, 1999. Additionally, this plaintiff asserts under 42 U.S.C. § 1985 a conspiracy to discriminate against her and retaliate against her for filing a complaint with the United States Equal Employment Opportunity Commission. She filed a timely complaint with the EEOC and received a right to sue letter on October 7, 1998.

This court held an extensive pretrial conference on May 19, 2000 by which the parties were given an opportunity to discuss previously filed motions and to supplement those motions and bring them all within the ambit of Rule 56 of the Federal Rules of Civil Procedure. The supplements and responses have been filed and considered along with the remainder of the record and the motions now ripe for ruling.

## IV. STANDARD OF REVIEW

The standard on a motion for summary judgment is now well established. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Bragg v. Navistar Int'l Trans. Corp.,* 164 F.3d 373 (7th Cir.1998).

Under *Celotex,* the initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56); *Larimer v. Dayton Hudson Corp.,* 137 F.3d 497 (7th Cir.1998). A question of material fact is one which could become outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case should be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and designate specific facts establishing that there is a genuine [material] issue for trial. *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel,* 160 F.3d 1139 (7th Cir.1998); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.,* 60 F.3d 317, 320 (7th Cir.1995). This general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue. *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793 (7th Cir.1995); *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368 (7th Cir.1992); *Tomasello v. Delta Air Lines, Inc.,* 8 F.Supp.2d 1090 (N.D.Ill.1998). Accordingly, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Collier v. Budd Co.,* 66 F.3d 886, 892 (7th Cir.1995); *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir. 1994).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560 (7th Cir.1996). Applying the above standard, this Court addresses defendants' motion.

## V. ANALYSIS

The parties to this case have raised numerous issues all related to the Plaintiff's failure to promote discrimination claim. The Plaintiff alleges that she was discriminated against because of her age, race and gender in violation of both Title VII and the Fourteenth Amendment of the Constitution. She also alleges that the Defendants filed a false affidavit with their Motion for Summary Judgment, that of George Manous, who testified in his deposition that statements in his affidavit were probably false. The Defendants have responded with a Motion to Suppress the deposition testimony of George Manous, stating that it was incomplete and that he never signed it. In addition, the Defendant school corporation has filed a Motion to Dismiss the Plaintiff's age discrimination claim based on the Supreme Court's ruling in *Kimel v. Florida Board of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), claiming that the

school corporation is entitled to Eleventh Amendment immunity as a political subdivision of the State of Indiana.

This Court will first consider whether the Supreme Court's opinion in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) applies to this case. Then the Court will discuss the deposition testimony of George Manous. Finally, the Court will get to the merits of the case and determine if the Plaintiff has presented enough evidence to raise a triable issue of fact allowing her to get past the Defendants' Motion for Summary Judgment and present her case to a jury.

### A. The Status of a School Corporation in Indiana for purposes of Eleventh Amendment Immunity

■ The Defendant East Chicago School Corporation has asked the Court to dismiss the Plaintiff's ADEA claim based on the Supreme Court's determination in *Kimel* that Congress exceeded its authority when it abrogated the Eleventh Amendment and made the ADEA applicable to the States. *Kimel*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522. The Plaintiff responds that she is not claiming discrimination under the ADEA, but rather under the Equal Protection clause of the Fourteenth Amendment. Pl.'s Resp. to Mot. to Dismiss at 3. However, because the school corporation is making a broader claim than it seems to realize, the Court must still address the immunity issue, for if the school corporation is an arm of the State for purposes of Eleventh Amendment immunity, then it follows that the school corporation, like the state, is not a person

capable of being sued under 42 U.S.C. Section 1983. *See J.A.W. v. Marion County Dep't of Public Welfare*, 687 N.E.2d 1202, 1203 (Ind.1997), citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Since the Plaintiff relies on Section 1983 to bring her cause of action under the Fourteenth Amendment, the Court must determine the status of school corporations in Indiana for purposes of both Section 1983 and the Eleventh Amendment.

As the Supreme Court of Indiana noted in a recent case, the United States Supreme Court uses the same analysis for both questions: whether a governmental entity is a "person" for purposes of § 1983; and whether it shares the sovereign immunity of its parent state. *See J.A.W.*, 687 N.E.2d at 1204. The answer is determined by looking at state law. *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The only case from Indiana directly addressing this issue is from the Court of Appeals of Indiana, First District, in which the Court, after an exhaustive analysis of the Indiana Constitution and case law, concluded that in Indiana, school districts are an arm of the State and therefore not persons for purposes of suit under Section 1983. *See Board of Trustees of Hamilton Heights School Corporation v. Landry*, 622 N.E.2d 1019 (Ind.Ct.App. 1993). However, that ruling was called into question by the Seventh Circuit in *Baxter v. Vigo County School Corporation*, 26 F.3d 728 (7th Cir.1994),[2] and the Supreme Court of Indiana has never directly ruled on the issue.

---

2. The Seventh Circuit did not have to rule on the immunity issue in *Baxter* because the defendant had failed to raise it properly, but noted that *Landry* was not consistent with past federal and state decisions, and its reli-

ance on cases dealing with governmental bodies that are clearly instrumentalities of the state "renders it particularly dubious authority." *Baxter*, 26 F.3d at 735.

The Indiana Supreme Court has, however, provided guidance for state and federal courts wrestling with the proper classification of a governmental entity in Indiana. *See J.A.W. v. Marion County Dept. of Public Welfare,* 687 N.E.2d 1202. In *J.A.W.,* the Court applied factors which it gleaned from the 1994 United States Supreme Court decision in *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), and concluded that the entire state welfare system, including the county departments which administer the programs, fall under the umbrella of Eleventh Amendment immunity. In its analysis, the Indiana Supreme Court specifically mentioned Indiana statutes in which the Indiana legislature classifies school districts as municipal corporations.[3] Classification as a municipal corporation has the double effect of making local school corporations amenable to suit as persons under Section 1983, and of removing them from the protection of the Eleventh Amendment. Therefore, the Defendants' assertion that they are immune from suit under the ADEA as an arm of the state is without merit, and the Defendants' Motion to Dismiss pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure is hereby **DENIED.**

### B. The Defendants' Motion to Suppress the Deposition of George Manous

■ The Defendant has moved to suppress the deposition of George Manous on the grounds that the Plaintiff's counsel requested a continuance of the deposition, the continuance was scheduled but later canceled, therefore, the deposition was never completed. In particular, the Defendants object to the admission of statements made in the deposition when they were not afforded an opportunity to cross examine the witness and clarify the statements. Finally, the Defendants object to admission of the deposition because the court reporter erroneously attached a certificate of waiver of signature even though the deposition was never completed and Mr. Manous was not advised of his rights regarding signature. Def.'s Ex. A. Federal Rule of Civil Procedure 32(d)(4) states as follows:

> **(4) As to Completion and Return of Deposition.** Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.

FED.R.CIV.P. 32(d)(4). The Defendants assert that they are in compliance with this rule, and that their motion should be granted.

The Plaintiff points out, however, that the deposition was taken June 13, 2000, that the Defendants had a copy of the incomplete deposition and even made reference to it in their Supplemental Motion filed June 30, 2000, and yet they waited to object to the irregularities in the deposition until September 18, 2000, after the Plaintiff filed her response. Pl.'s Resp. at 2–3. The Plaintiff states that she received the deposition on June 18, 2000, with the certification stating that the deponent waived the signature requirement, and it

---

**3.** The Court focused on Ind.Code Ann. § 36–1–2–10 (West 1997), which includes school districts under the definition of "municipal corporations." The definition lists a number of entities considered to be municipal corporations and ends with the catchall phrase, and any "other separate local governmental entity that may sue and be sued." *J.A.W.,* 687 N.E.2d at 1207.

seems likely that the Defendants also received a copy at the same time. Rule 32(d)(4) states that irregularities are waived unless a motion to suppress is made with reasonable promptness after the defect is, or with due diligence might have been, discovered. Waiting three months to file a motion to suppress does not satisfy the requirement for "reasonable promptness." Therefore, the Court holds that the Defendants waived their right to object to the irregularities and the Defendants' Motion to Suppress is therefore **DENIED**.

### C. Plaintiff's Claim of Discrimination Based on her Race, Gender, and Age

■ Delores Fortenberry believes that the Defendants discriminated against her when they failed to promote her to the position of Vice Principal of Central High School over Kevin Meyers, a twenty-eight year old white male who, as it turned out, did not have the required number of years of teaching experience to qualify for the position. Because she does not have any direct evidence of discrimination, Fortenberry relies on the indirect burden-shifting method established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this approach, for a failure to promote claim, Fortenberry must first establish a *prima facie* case, by showing that (1) she is a member of a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) the position was given to someone not in the protected class who had similar or lesser qualifications. *Malacara v. City of Madison,* 224 F.3d 727, 728 (7th Cir.2000), *rehearing en banc denied;* and *Pafford v.*

*Herman,* 148 F.3d 658, 669 (7th Cir.1998) (citations omitted).

Once a *prima facie* case is established, the burden shifts to the defendants to produce a legitimate, non-discriminatory reason for their decision. *Id.* The burden of persuasion remains at all times with the plaintiff. *Id. citing St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the Defendants articulate a non-discriminatory reason, they have met their burden, and the plaintiff must then establish that the defendants' proffered reasons were not the real reason, but rather a pretext for discrimination. *Id.*

#### 1) The Plaintiff's *Prima Facie* Case

The parties agree that the Plaintiff was a member of a protected class based on race, gender, and age, and that despite her qualifications, she was not selected for the position. However, the Defendants argue that Fortenberry cannot make a *prima facie* case because she failed to establish the second element, claiming that Fortenberry was not living up to the School City's legitimate expectations at the time she applied for the Vice Principal position. Def.s' Mem. in Supp. at 7. The Seventh Circuit requires the plaintiff in a failure to promote case to demonstrate that she was qualified for the promotion position. *Pafford,* 148 F.3d at 669. If she is not qualified for any reason, then she falls short of establishing a *prima facie case,* and there is no inference of discrimination. *Id.* The Defendant Doloris Lakich has provided a list of deficiencies in Fortenberry's performance which she alleges made her less qualified for the position than Meyers. Aff. of Doloris Lakich at 2. She does not, however, claim that these deficiencies made her unqualified for promotion, just less qualified than Meyers. In addition, these deficiencies were not documented or

discussed with Fortenberry until after she filed her grievance.

In response, Fortenberry alleges that her past evaluations had always been excellent or superior, which shows that she was living up to her employer's legitimate performance expectations. Pl.'s Resp. at 8. She has provided a copy of an evaluation from 1989 which supports her claim. Pl.'s Ex. 39. She claims that she cannot document other past evaluations because the Defendants never sent them, even when asked to do so in discovery motions. *Id.* In addition, the Plaintiff points to deposition testimony by one of the School Trustees that the report to the Trustees indicated that Fortenberry did a very good job in the position of Dean. *Id.* citing the Deposition of Ramon Colon. Viewing the facts in the light most favorable to the plaintiff, the Court concludes that Fortenberry has succeeded in creating a factual issue as to whether she was living up to her employers' legitimate performance expectations. However, Fortenberry must still establish the rest of her *prima facie* case.

The Defendants also claim that Fortenberry is unable to establish the fourth element of her *prima facie* case. Def.s' Mem. in Supp. at 7. The fourth element requires that Fortenberry show that the position was given to someone not in the protected class who had similar or lesser qualifications, or produce other evidence from which one can infer that the plaintiff was denied promotion for a discriminatory reason. *Id.* The Defendants base their argument on the fact that at the time Meyers was recommended by the administrative group and approved by the Trustees, they believed he was more qualified for the position than Fortenberry, and did not find out until after the appointment was approved that he was in fact not qualified for the position. Def.s' Mem. in Supp. at 9. In addition, Doloris Lakich,

who was a member of the group and had worked with Fortenberry for three years, believed that despite the fact that Fortenberry had a doctorate and many years of teaching, she had "deficiencies" in areas where Meyers had strengths, which made him the better candidate. Finally, Connie Manous, Director of Special Education for School City of East Chicago, states in her affidavit that she recommended Meyers for the position primarily because of his experience in special education and his familiarity with the requirements of federal legislation such as the Individuals with Disabilities in Education Act, and Section 504 of the Rehabilitation Act. She stated that this Vice Principal position worked closely with her department on special education issues and based on her experience working with both applicants, she believed Meyers was the best applicant for the position.

Only after the appointment was it discovered that Meyers had been issued an Administrator's License by mistake and that he lacked the five years of teaching experience listed as a requirement in the job posting. The Defendants produced a letter documenting that the mistake was made by the State Board of Licensing, not School City of East Chicago, and that the Board's usual policy was to allow the licensee to keep a wrongfully issued license and to give him or her time to correct any deficiencies. Because five years of teaching was a requirement for an Administrator's License, it was reasonable for the committee and the Trustees to rely on the fact that Meyers had an Administrator's License as proof that he had the required five years of teaching. Therefore, although Fortenberry has submitted sufficient evidence to establish that she was qualified for the position of Vice Principal, she bases most of her argument for the fourth element on a fact that was unknown to the Administration or the Trustees at

the time the decision was made. If that fact is removed, the question becomes, has the Plaintiff created a triable issue of fact that Meyers, as the Defendants perceived his qualifications at the time he was selected, was only equally or less qualified than the Plaintiff, with her doctorate and her 21 years of teaching experience, rather than more qualified as the Defendants assert.

In some situations, where the Defendant has produced a legitimate non-discriminatory reason for its decision, it is irrelevant whether a *prima facie* case has been made, and the court may move on to the issue of pretext. *See Malacara v. City of Madison*, 224 F.3d 727, 729 (stating that where the defendant has met its burden, it is irrelevant whether a prima facie case has been made, citing *Sample v. Aldi*, 61 F.3d 544 (7th Cir.1995). In this case, the Defendants have raised a legitimate, non-discriminatory reason for their decision to appoint Meyers as Vice Principal rather than the Plaintiff, that he was more qualified. This meets the Defendants burden of production and under McDonnell Douglas, shifts the burden back to the Plaintiff to establish that the Defendants' stated reason is merely a pretext for discrimination. *Bell v. Environmental Protection Agency*, 232 F.3d 546, 549–50 (7th Cir. 2000)). Because the issue of whether the Defendants believed Meyers to be more qualified than the Plaintiff is crucial both to establishing the fourth element of the Plaintiff's *prima facie* case and to establishing pretext, the Court will move on and discuss the issue of pretext.

## 2) Pretext

The Seventh Circuit has held that pretext may be established in one of two ways: with direct evidence that the employers was more likely than not motivated by a discriminatory reason; or indirectly by evidence that the employers' stated rea-

son was not credible. *Jackson v. Brach Corp.*, 176 F.3d 971 (7th Cir.1999) (citations omitted). To use the indirect method, the Plaintiff must convince the factfinder by a preponderance of the evidence that the Defendants' stated reason is "a lie, specifically a phony reason for some action." *Id.* (citations omitted). In other words, pretext may be established "by proving one of the following: '(1) [d]efendant's explanation had no basis in fact; or (2) the explanation was not the real reason; or (3) at least, the reason stated was insufficient to warrant' the adverse job action." *Malacara*, 224 F.3d at 733, Williams in dissent, quoting *Hughes v. Brown*, 20 F.3d 745, 747 (7th Cir.1994).

The question before the court on a summary judgment motion is "whether [plaintiff] has created a genuine issue concerning the sincerity of the proffered reasons" given for the adverse employment action. *Id.* The Plaintiff cannot prevail if the Defendant "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish, trivial, or even baseless." *Bell*, 232 F.3d 546, 549–50 (citations omitted). This court "does not sit as a super-personnel department that reexamines an entity's business decisions." *Id.*

The Court must determine, therefore, whether the Plaintiff has created a genuine issue as to the sincerity of the Defendants' belief that Meyers was the most qualified candidate. First, the Plaintiff has attempted to create a triable issue of fact based on inconsistencies in the testimony of George Manous. Pl.'s Resp. to Def.'s Supp. Br. at 3. On February 1, 2000, he signed an affidavit stating that he served on the interview committee that recommended Meyers for the position of Vice Principal, and that he participated in the interviews of five applicants, including the Plaintiff. Then, on June 13, 2000, he testified in his deposition that he did not re-

member being part of the committee, and that he did not think he made a recommendation for the position. Affidavit of George Manous at 61. The Plaintiff asserts that the affidavit is a lie, indicating that the Defendants' stated reason for their decision is pretextual. Pl.'s Resp. to Def.'s Supp. Br. at 3.

The Defendants responded by filing a Motion to Suppress the entire deposition, which this Court denied, stating that it was incomplete and that they had not had an opportunity to cross examine the witness to clarify his responses. Def.'s Mot. to Supp. While it is problematic that George Manous gave inconsistent testimony, it is not material to the outcome of this case. Defendants have also supplied the affidavits of five other individuals who undisputably were involved in the interviews and who testified as to their reasons for recommending Meyers over the Plaintiff. If George Manous did not participate in the process of making the recommendation, then according to his deposition testimony, the only role he played in the hiring process was to pass on the recommendation of the interview committee to the Superintendent and the Board of Trustees. Aff. of George Manous at 4. Whatever the reason for the inconsistency, if George Manous was not on the committee that interviewed the applicants and did not make a recommendation one way or the other, then he was not in a position to influence the final decision, and the inconsistency is harmless error. Therefore, the Court holds that this is not the kind of triable issue of fact that will enable a plaintiff to survive a motion for summary judgment.

The Plaintiff presents other evidence, however, which she alleges creates triable issues of fact on the issue of pretext. First, she states that there was a pattern of discrimination against her beginning on July 11, 1989, when she first began applying for administration positions after receiving her doctorate. Pl.'s Resp. to Def.'s Supp. Br. at 2–3. However, as a general rule, the Plaintiff cannot raise for the first time an issue in her Response Brief that was not raised in her EEOC charge, because allowing a complaint to encompass additional allegations would "frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Vela v. Village of Sauk Village*, 218 F.3d 661, 663 (7th Cir.2000) (quoting *"Cheek v. Western and Southern Life Ins. Co.* 31 F.3d 497, 500 (7th Cir.1994)). In her EEOC complaint, the Plaintiff claimed she was discriminated against on the basis of her race, age, and gender, reporting the dates that the discrimination took place as August 6, 1996 to August 6, 1996, the date that Meyers was appointed as Vice Principal of Central High School. While a claim in a civil action need not be an exact replica of a claim described in a charge, there must be "a reasonable relationship between the allegations in the charge and the claims in the complaint." *Id.* (citations omitted). Courts have sometimes looked beyond the four corners of the EEOC charge form where "it is clear that the charging party intended the agency to investigate the allegations."

In this case, the Plaintiff's EEOC charge contains a single, specific incident which she alleges was discriminatory. Nothing in her EEOC charge would let the EEOC know that she intended for it to investigate what she now believes to have been a seven-year pattern of discrimination against African American females by School City of East Chicago in its promotion decisions. Nor does her charge as worded give the Defendants notice that they need to put on evidence to counter such a claim. Therefore, the Plaintiff cannot bring a claim that the Defendants en-

gaged in a pattern of discrimination against her that spanned a seven-year period because it does not bear a reasonable relationship or fall within the ambit of her EEOC charge. The same reasoning also applies to her claims of retaliation, which is also barred because not included in her EEOC charge.

Second, she claims it is "inconceivable" that George Manous, the director of Human Resources for School City of East Chicago, would not have known that Meyers lacked the required five years of teaching, since he "was privy to the hiring of Meyers on July 7, 1992, and assisted him in obtaining a limited teaching license." Pl.'s Resp. to Def.'s Supp. Br. at 3. However, as already discussed, it appears the role played by Mr. Manous in the selection process was minimal, and that the administration was reasonable in believing that Meyers was qualified and had the requisite five years of teaching, since he had an administrator's license. The Plaintiff's belief that Mr. Manous must have known that Meyers was not qualified, without more, is insufficient to create a triable issue of fact.

■ Third, the Plaintiff challenges whether the administration could have honestly believed that Meyers was the best applicant, based on as assertion that "administration never investigated or in-terviewed any of the applicants." Pl.'s Resp. to Def.'s Supp. Br. at 3. This, however, is a misstatement of the facts and the testimony of George Manous in his deposition. Manous stated that the Trustees did not investigate each applicant, but that they had delegated the responsibility to investigate the applicants and make a recommendation to a group within the administration. Dep. of G. Manous. The administration then interviewed the applicants, investigated their background and references, discussed their strengths and weaknesses, and made a recommendation to the Superintendent and Trustees. *Id.* The Plaintiff may question the wisdom of this process and think that the Trustees should make their own independent investigation, but that is the kind of policy decision that does not concern the Court, as long as there is a process structured in such a way that applicants' constitutional rights are not violated. The Plaintiff has not pointed to anything in this process that violates her constitutional rights.[4]

■ While most of the arguments made by the Plaintiff in her Response and Reply to the Defendants' Motions are insufficient to create a triable issue of fact, the Court is concerned about one issue which she raised first in her Motion to Strike, and which she mentions again in her Response to Defendants' Supplemental Motion, and

---

4. As a footnote to the Plaintiff's filing of a grievance on the initial appointment of Kevin Myers, it needs to be mentioned that the Vice Principal position is not a bargaining unit position, but an administrative one. Generally in the private work economy, the Vice Principal's job is non-union management. It is obviously quite similar in the public educational context. Certainly, the kinds of charges made by this plaintiff by very eminent and experienced counsel must be taken seriously. This having been said, it also must be emphasized that this court is not constructed or authorized to become the super-personnel board for this or any other public school system. It is true that the best administrative system can engage in discrimination that violates the federal statutes or retaliation in reference to claims made for the protection of those federal statutes. To repeat, however, the burden the remains at all times on the plaintiff. It is also true that within the federal judiciary, seasoned and experienced judges can come up with a different analysis looking at similar evidence. This is certainly true in *Andre v. Bendix Corporation,* 774 F.2d 786 (7th Cir.1985), which was reversed by the Court of Appeals in 1986. See also 841 F.2d 172 (7th Cir.), *cert. denied,* 488 U.S. 855, 109 S.Ct. 144, 102 L.Ed.2d 116 (1988).

that is the conclusory nature of the Defendants evidence. The Defendants gave as their non-discriminatory reason for hiring Meyers instead of the Plaintiff, or any of the other applicants, their belief that he was the most qualified applicant. They supported this reason with conclusions in affidavits and deposition testimony by interested parties, with no hard evidence to explain to the court the basis for those conclusions.

The affidavits of all five members of the administrative group use almost identical language stating that they discussed the strengths and weaknesses of each candidate and that each one believed that Meyers was the best candidate. See Aff.s of Doloris Lakich, Charles Carter, Raymond Scott, Juan Anaya, and Connie Manous. In addition, they contain identical statements that their recommendation for the position of Vice Principal of Central High School was based on "the relative skills and abilities of the applicants and which applicant would best perform in the position" and was not based "upon the age, race or gender of any of the applicants." As additional support for their assertion that Meyers was more qualified, the Defendants supplied a statement from Doloris Lakich, Principal of Central High School, that as the Plaintiff's immediate supervisor for two to three years, she had noted certain performance deficiencies, which she listed in the affidavit. Aff. of Doloris Lakich. Finally, the Defendants supplied information in the affidavit of Connie Manous, Director of Special Education, that Meyers was more qualified because of his background in special education, an important element of the job at issue which Dr. Fortenberry lacked.

The Plaintiff points out, however, that most of the Defendants supporting evidence is in the form of conclusory testimony of interested parties. Pl.'s Mot. to Strike. In particular, she notes that the performance concerns of Doloris Lakich, a defendant in this suit, were never documented in her performance evaluations or discussed with her personally, therefore, they could have been fabricated for purposes of this suit. The same applies to the affidavit of Connie Manous, also a named defendant in this suit, and her assertion that the Vice Principal position in question worked closely with the Special Education Department and therefore needed to be familiar with the various federal laws in the area. Although it is undisputed that Meyers had training and teaching experience was in the field of special education, the Defendants produced no documentation that this was a requirement of the position. While this Court denied the Plaintiff's Motion to Strike because the Defendants are entitled to submit the testimony of decision-makers as to the reasons for their decisions, what this Court is left with is a situation similar to that in *Szymanski*, already discussed above, in which the Seventh Circuit held "where the moving party's version of material facts is supported solely by self-serving assertions, self-serving assertions to the contrary by the nonmoving party may be sufficient to create a credibility dispute which is best resolved at trial." *Szymanski*, 231 F.3d 360, 364 (7th Cir.2000).

In this case, the Defendants' failure to provide documentation for their assertions allows the Plaintiff to create a triable issue of fact as to pretext merely by making assertions to the contrary. The Court holds, therefore, that the Plaintiff has created a triable issue of fact as to whether the Defendants reasons are pretextual, specifically the claims that the Plaintiff was not considered for the position because of her performance deficiencies, and that Meyers was more qualified because the position required someone with a background in special education. However,

that does not end the discussion. After raising a triable issue of fact as to pretext, the burden-shifting framework drops out, and the only question is whether Fortenberry has presented enough evidence to allow a rational jury to find that she was the victim of discrimination. *Massey*, 226 F.3d at 925.

### 3) Pretext for Discrimination

■ Even if the Plaintiff has succeeded in creating a triable issue of fact as to whether she has a prima facie case, and as to whether the Defendants honestly believe their explanations, she still must establish by a preponderance of the evidence that the real reason was more likely than not discrimination. *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). *Reeves* is the Supreme Court's most recent pronouncement on the legal standards a plaintiff must meet in order to prove a case of age discrimination. *Adams v. Ameritech Services, Inc.*, 231 F.3d 414, 421–22 (7th Cir.2000) (citing *Reeves v. Sanderson Plumbing Products Inc.*, 120 S.Ct. at 2110). In *Reeves*, the Court specifically addressed the effect of a finding of pretext in an employment discrimination case. *Reeves*, 120 S.Ct. at 2108–9. Although *Reeves* was an appeal from an adverse ruling on a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, it nonetheless provides important guidance because the method of proof in ADEA cases and Title VII cases is similar, and the standard for Rule 50 motions mirrors the standard used in Rule 56 motions for summary judgment. *Malacara*, 224 F.3d at 731 (Williams dissenting). In *Reeves*, the Court reasoned that whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors, including the strength of the *prima facie* case, the probative value of the proof that the employers' explanation is false, and any other evidence that supports the employer's case and that properly may be considered. *Reeves*, 120 S.Ct. at 2109. Liability in a discrimination case "depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decisions." *Adams*, at 421–22 (citations omitted). In other words, the plaintiff must show that the protected characteristic "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Id.*

A *prima facie* case "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 120 S.Ct. at 2109. However, the Court made it clear that the trier of fact is not required to find discrimination even if it rejects the defendant's explanation. *Massey v. Blue Cross–Blue Shield of Illinois*, 226 F.3d 922, 925 (7th Cir.2000)(discussing *Reeves*, 120 S.Ct. at 2109). For example, the Supreme Court noted that "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," then an employer would be entitled to judgment as a matter of law. *Reeves*, 120 S.Ct. at 2109.

In *Massey*, the Seventh overturned a jury verdict for the plaintiff even though she had successfully convinced the jury that she had established a *prima facie* case of discrimination, and that the defendant's reasons were pretextual. While noting that overturning a jury verdict is not something the Court does lightly, Judge Wood, writing for the Court, agreed with the district court that the plaintiff's

case "founders for lack of evidence." *Massey*, 226 F.3d at 925. The Court stated, "The facts that, in Massey's view, demonstrate racial discrimination, cannot bear the weight she asks of them." *Id.* The evidence produced by the Plaintiff consisted of the following: that her writing skills were "not that bad" as compared to others in the department; that, after she was fired, she was replaced by a Caucasian employee; that the three African American employees were seated on one side of the room, while the two white employees were seated on the other; and that her immediate supervisor once called her "stupid." *Id.* at 926. According to the Seventh Circuit, this was not enough evidence to establish even an inference that the defendant's real reason for firing the plaintiff was illegal discrimination. *Id.*

To survive summary judgment, Fortenberry must produce evidence that, taken as a whole, would allow an inference that she was denied the promotion for a discriminatory reason. *Pafford*, 148 F.3d at 659. The Court has carefully examined all of the Plaintiff's submissions, and simply cannot find anything which would allow a reasonable person to infer that she was discriminated against because of her race, her gender, or her age. This Court is particularly mindful of the fact that everyone involved in the process of making the challenged decision was either the same gender as the Plaintiff, approximately the same age as the Plaintiff, or a member of a minority group that has traditionally been the object of discriminatory treatment. In addition, the Arbitrator, even though he found that Fortenberry's contract rights had been violated because Meyers was not qualified for the position, stated that he could find no hard evidence that the decision was made for a discriminatory reason.

The Plaintiff has presented no evidence other than the fact that a young white male got the position she wanted, and that he turned out not to have the necessary qualifications for the position. Sometimes a plaintiff can bolster the minimal showing of a *prima facie* case and weak evidence of pretext with statistics indicating a pattern of discrimination,[5] but in this case, the statistics presented to the Court work against the Plaintiff, not for her. For example, the administrative group that recommended Meyers was composed of two African American males approximately the same age as the Plaintiff, two Caucasian females a few years younger than the Plaintiff, and an Hispanic male approximately fifteen years younger than the Plaintiff. This is not the kind of statistical evidence that will support an inference of discrimination based on race, gender or age. The Court has carefully examined other statistical evidence submitted by the parties, including the list of administrative positions for which the Plaintiff applied, and the list of School City of East Chicago Administrative Staff for the 1996–97 School Year, and finds it equally void of anything that would support an inference that the Defendants real reason for refusing to promote the Plaintiff was illegal discrimination because on her race, gender and age. A summary of the statistics will illustrate the point.

The list of administrative positions for which the Plaintiff applied includes the other applicants for each position, and marks the successful candidate. It shows that the Plaintiff applied for fourteen different positions from 1988 to 1998, but it must contain an error, because it does not show she was successful on any of the applications. Addendum to Aff. of G. Manous. Both the Plaintiff and the Defen-

---

5. *See, e.g. Bell v. Environmental Protection Agency*, 232 F.3d 546, 552–53 (7th Cir.2000), and *Adams v. Ameritech Services, Inc.*, 2000 WL 1569416 (7th Cir.2000).

dants make reference to the fact that in 1989, she applied for and was appointed to the position of Dean at Central High School. Making an adjustment for this fact, the statistics show the following:

— a total of five African American females applied for these positions, including the Plaintiff-two were successful;

— a total of seven African American males applied for the positions, and five times they were successful, but the same individual, Wesley Bennett, was successful two times;

— a total of six Caucasian females applied for the positions, with only two successes, both by the same individual, Doloris Lakich;

— a total of eight Caucasian males applied for the positions, with only three successes, two of them by the same individual, John U. Todd;

— a total of three Hispanic males applied for the positions, with two successes;

— only one Hispanic female applied, and she was unsuccessful.

Most of the successful applicants were younger than the Plaintiff, but generally by just a few years. This is not the kind of statistical evidence that would allow a reasonable factfinder to infer that the decisions were based even in part on the Plaintiff's race, gender, or age. The list of administrators for the 1996–97 school year shows a similar diversity in composition based on race, gender and age. It shows that during the 1996–97 school year, the School City of East Chicago had five African American females, three African American males, six Caucasian females, eight Caucasian males, three Hispanic males and four Hispanic females in administrative positions, ranging in age from the youngest, Kevin Meyers, who was only twenty-eight, to Mr. George Manous, who

was sixty-five at the time and John Arzumanian who was sixty-six. This list does not support an inference that African American females in general or the Plaintiff in particular were discriminated against by the Defendants on the basis of race and gender, or that the school district had a preference for younger employees over ones with more maturity. In addition, these lists are only of limited usefulness because they do not show the applicants, or the qualified applicant pool, for all administrative positions within the School City of East Chicago during the relevant time period.

The final statistic that works against the Plaintiff is the composition of the administrative staff at Central High School itself, three of whom were on the committee that recommended Meyers. The new principal was a Caucasian female just a few years younger than the Plaintiff; one of the Vice Principals was an African American male approximately the same age as the Plaintiff; the other Vice Principal was an Hispanic male about fifteen years younger; and one of the Deans was the Plaintiff herself. Without meaning any disrespect to the Plaintiff or her able and experienced counsel, the Court holds as a matter of law that she has not presented sufficient evidence, taken as a whole, for a reasonable factfinder to conclude that the Defendants' real reason for passing her over in favor of Meyers was because of her race, her gender, or her age. Therefore, the Defendants' Motion for Summary Judgment must be **GRANTED**.

## VI. CONCLUSION

For the reasons set forth above, the Defendants Motion for Summary Judgment is hereby **GRANTED**. The Defendants' Motion to Dismiss the Plaintiff's Claim of Age Discrimination, and the Defendants' Motion to Suppress the Deposi-

tion Testimony of George Manous are hereby **DENIED.** Each party will bear its own costs.

**IT IS SO ORDERED.**