In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3504

Stephanie A. Massey,

Plaintiff-Appellant,

v.

Blue Cross-Blue Shield of Illinois,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 189--David H. Coar, Judge.

Argued April 13, 2000--Decided September 6, 2000

   Before Flaum, Chief Judge, and Harlington Wood, Jr.,
and Diane P. Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge. Stephanie Massey was
fired by Blue Cross-Blue Shield. Believing that
this was the result of racial discrimination in
violation of Title VII, 42 U.S.C. sec. 2000e et
seq., and 42 U.S.C. sec. 1981, she brought this
suit in federal court. A jury agreed with her,
but the district court judge granted Blue Cross's
post-verdict motion for judgment as a matter of
law. Massey now appeals, and, for the reasons
stated below, we affirm.

   Massey is an African-American woman who worked
for Blue Cross's Direct Markets Division. For the
first few years of her employment there, she
answered customer complaints and inquiries both
over the telephone and in writing. From 1992 to
1994, she received positive evaluations: her
technical and research skills were "excellent,"
her writing had "improved a good deal," and she
was rated "superior" in most categories. The
evaluations were critical only of her
organizational skills and attendance.

   Based on this performance record, in 1994
Massey was hired into Blue Cross's special
Executive Inquiries Unit. That unit responded to
the more difficult complaints and inquiries
received by Blue Cross and was headed by Susan
Amico, a Caucasian woman. The unit also had two

other employees who were already there: Carrie Thomas, an African-American whose position was equivalent to Massey's, and Bessie Goree, another African-American who held the position of administrative assistant in the unit. At the same time as she hired Massey, Amico also hired Karen Garza, a Caucasian woman, for a job equivalent to Massey's.

The Unit was situated in a room with two rows of three desks. Amico arranged the seating of the Unit such that all of the African-American employees (Thomas, Goree, and Massey) were in one row. Amico placed herself and Garza in the other row, with the only empty desk positioned between the two.

Amico's evaluations of Massey went from good to bad rather quickly. By 1996, Amico claimed that Massey's writing was "below average," her errors were numerous, and that her other skills were merely "satisfactory." This led Amico to put Massey on a 60-day probation period, at the end of which Amico fired her.

Massey sued Blue Cross in March of 1996, alleging discrimination and retaliation based on her race in violation of Title VII and sec. 1981. The court granted Blue Cross's summary judgment motion as to the retaliation charge, but it allowed Massey's discrimination charge to go forward. At trial, Massey introduced evidence that her work had previously been commended, as well as evidence that her work in the Executive Inquiries Unit was not poor (at least not in comparison to the work of her peers). She testified that Amico had called her "stupid," and had required her work to be rewritten, even when there was nothing wrong with it. In fact, Massey's work was redone even when she copied work that had already been deemed acceptable. Massey argued that Amico's negative evaluations were not based on her performance, but on Amico's racial stereotypes. Massey noted that Garza, a Caucasian woman, was given more assistance by Amico than she was, and that Amico had tried to separate the races through seating assignments.

Blue Cross defended its decision by arguing that Massey was fired due to poor writing, investigatory, and follow-up skills. Blue Cross claimed that the other African-American employees in the unit were not subjected to discrimination, and that the seating assignment could not have separated the races because the rows of seats were too close to allow for any meaningful separation.

The jury believed Massey, returning a verdict in her favor on February 10, 1999. Blue Cross

filed a Rule 50 motion, and the district court granted it, entering a judgment as a matter of law on August 24, 1999.

We review a district court's grant of judgment as a matter of law de novo. See Futrell v. J.I. Case, 38 F.3d 342, 346 (7th Cir. 1994). Especially after a jury has evaluated a case, we bear in mind that the question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict. See id. But there must have been more than a "mere scintilla" of evidence to support the verdict. Id. When examining the record, we look at the totality of the evidence, see Sheehan v. Donlen Corp., 173 F.3d 1039, 1043 (7th Cir. 1999), and we view that evidence and the inferences which may be taken from it in the light most favorable to the party against whom the judgment was granted. See Cygnar v. City of Chicago, 865 F.2d 827, 834 (7th Cir. 1989); Tice v. Lampert Yards, Inc., 761 F.2d 1210, 1213 (7th Cir. 1985). It is worth bearing in mind, however, that this is fundamentally the same standard that we use in reviewing a decision on summary judgment, with the important difference that we now know exactly what evidence was put before the jury. If, reviewing that evidence in the proper light, the nonmoving party did not introduce enough to support her claim, then judgment as a matter of law is correct.

Overturning a jury verdict is not something that we do lightly. See Sheehan, 173 F.3d at 1043. According to our civil justice system, as enshrined in the Seventh Amendment to the Constitution, the jury is the body best equipped to judge the facts, weigh the evidence, determine credibility, and use its common sense to arrive at a reasoned decision. See id. at 1046. As a reviewing court, we must be "particularly careful . . . to avoid supplanting [our] view of the credibility or the weight of the evidence for that . . . of the jury." Id. at 1047 (internal citations omitted). Here, even taking that generous standard of review into account, we agree with the district court that this case founders for lack of evidence. The facts that, in Massey's view, demonstrate racial discrimination, cannot bear the weight she asks of them.

Blue Cross argues that Massey's discharge was attributable to her poor written communication skills, investigatory ability, and follow-through skills. These are, of course, legitimate, non-discriminatory reasons for the discharge. At the pretrial stage (especially in a summary judgment context), once Blue Cross proffered this reason, it became Massey's burden to show that the reason

was pretextual. See Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 511 (7th Cir. 1986). She could do so by showing that Blue Cross's motive was more likely a discriminatory one, or by demonstrating that its proffered reason was not worthy of credence. See id.

But this case is not about summary judgment, and thus we need not tarry on the to's and fro's of the indirect proof methodology. At the trial, as we have explained before, the burden-shifting process came to an end, and the only question was whether Massey presented enough evidence to allow a rational jury to find that she was the victim of discrimination. See Diettrich v. Northwest Airlines, Inc., 168 F.3d 961, 965 (7th Cir. 1999); Gehring v. Case Corp., 43 F.3d 340, 343 (7th Cir. 1994). The Supreme Court's recent decision in Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000), makes it clear that she could do this either by convincing the jury that Blue Cross's claim of firing her for poor writing, investigatory skills, and follow-through was actually a pretext for discrimination, id. at 2108, or by other evidence from which it could find intentional discrimination. Id. at 2108-09 (also emphasizing that the trier of fact is not required to find discrimination if it rejects the defendant's explanation).

Massey first introduced evidence from which the jury could have inferred that Blue Cross's allegations about her poor performance were not worthy of belief, because her performance was not that bad, at least in relation to her co-workers. Massey pointed to appraisals by previous supervisors that proclaimed that Massey had "excellent technical skills . . . [and] research skills," that her writing had improved over time, and that she performed most of her tasks at a "superior" level. From 1992 to 1994, the appraisals criticized only her attendance and some organizational skills. But earlier performance evaluations that relate to less demanding jobs are of little value in assessing an employee's present performance. The only evidence about her performance in the Executive Inquiries Unit came from Amico, who said that Massey performed poorly, because her writing and investigatory skills were poor. Blue Cross also pointed out that the job in the Executive Inquiries Unit dealt with more difficult cases than those on which Massey had worked previously.

Massey also presented examples of her own written work, which the jury may have seen as undercutting Blue Cross's stated reason for firing her. While corrections were noted on many of Massey's letters and other work product, these

corrections were often not matters of incorrect grammar, spelling, or substance. Many of them simply suggested that those reviewing Massey's work had different writing styles with which they wanted her to conform. But the question for the court was not whether Amico was being too picky about Massey's writing style; it was whether Amico genuinely believed that Massey was not producing the kind of work Blue Cross wanted.

The jury also heard Amico's admission that other employees in Massey's Unit made mistakes, and it knew that Amico could not explain why she had evidently criticized Massey more than others. Amico's own evaluations of Massey's work contained numerous spelling, grammatical, and punctuation errors. Once again, however, even if Amico was not an A+ writer, it is hard to see why insisting on good writing from her subordinates amounted to racial discrimination, intentional or otherwise. It is always possible, of course, that the jury might have disbelieved everything Amico said, but we routinely deny summary judgments based on that kind of hope, and consistency requires us also to reject that possibility as a way of saving the jury's verdict.

Massey also presented more immediate evidence that Blue Cross's actual reason for firing her was discriminatory. After she was fired, she was replaced by a Caucasian employee. Garza, a Caucasian woman in the same position with the same seniority, received better treatment than Massey, in that Amico gave Garza help whenever she needed it but did not provide the same assistance to Massey. Massey presented evidence that Amico partitioned the room into a African-American and a Caucasian side by seating the African-American employees on one side of the aisle, and the Caucasian employees on the other. Massey also testified that Amico (her supervisor and the one responsible for her firing, and thus not a person whose so-called "stray remarks" were immaterial) called her "stupid," despite her previous work record and advanced degree.
The district court felt that neither the seating nor the name-calling could support a claim of racial discrimination. It was particularly troubled by the "seating arrangement" evidence. Because the two aisles of the room were very close together, the court observed that placing African-Americans on one side and Caucasians on the other could not possibly indicate racial animus. We agree that the seating proves nothing: in a room with only six desks, it is literally impossible to arrange three African-American employees and two Caucasian employees in the "neutral" way Massey thinks was required. Last, one rude comment from the supervisor that a person is "stupid," while

certainly not to be commended, does not amount to evidence of racial discrimination, even after Reeves.

In sum we find that the district court correctly ruled that the evidence Massey presented at trial did not justify submitting the case to the jury, and therefore it was proper to grant Blue Cross's renewed motion for judgment as a matter of law. Compare Denisi v. Dominick's Finer Foods, Inc., 99 F.3d 860 (7th Cir. 1996) (finding summary judgment proper where the plaintiff submitted only his own testimony in an attempt to combat documented evidence of his poor performance); McCalpine v. Foertsch, 870 F.2d 409 (7th Cir. 1989) (finding judgment as a matter of law proper where the plaintiff had no evidence to combat the employer's proof that the supervisors charged with discrimination were simply not an integral part of the hiring process); Christensen v. Equitable Life Assurance Society of the United States, 767 F.2d 340 (7th Cir. 1985) (finding judgment as a matter of law proper where the plaintiff's only evidence of pretext was a lawful program instituted by the employer).

We therefore AFFIRM the judgment as a matter of law in favor of Blue Cross-Blue Shield.