**William H. TIMAS, Plaintiff–Appellant,**

v.

**Byron KLASER, et al., Defendants–Appellees.**

No. 00–3561.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 21, 2001[*].

Decided Nov. 26, 2001.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before POSNER, MANION, ROVNER, Circuit Judges.

### ORDER

William Timas, an Indiana prisoner, brought suit alleging that his civil rights were violated during a chain of events beginning with his arrest and ending with his state drug prosecution. The district court screened Timas's complaint under 28 U.S.C. § 1915A(b) and dismissed all claims except for an excessive force claim against three law enforcement officers. The court then refused to accept Timas's two amended complaints. After one defendant settled, the district court granted summary judgment to another and later, at trial, granted a motion for judgment as a matter of law in favor of the third defendant. Timas now appeals, and we affirm.

In January 1997, Deputy United States Marshal Rick Chambers was hunting Kevin Smith, a fugitive wanted for attempted murder, drug dealing, and parole violations. When Chambers learned that Smith was staying at an Evansville, Indiana, apartment, he enlisted several Vanderburgh County sheriff's deputies to accompany him there. Chambers and others from the marshal's and sheriff's offices entered the apartment around midnight on January 21 and encountered appellant Timas, Smith, and another man. According to Timas, upon entry Deputy Sheriff Byron Klaser immediately grabbed him, forced him to the ground, threatened him with a gun, and stepped on his head. Chambers, he says, then forcefully pressed a knee into his back and handcuffed him. With the occupants secure, Deputy Sheriff Doug Daza, one of the law enforcement officials who entered the apartment that evening, took charge of obtaining a search warrant and searching the premises. Timas was arrested for assisting a criminal and later charged with a variety of drug-related offenses. In July 1997, he was convicted in Indiana state court of conspiracy to deal in cocaine and was sentenced to thirty years' imprisonment.

In December 1998, Timas filed a pro se civil rights complaint in the district court. In addition to Deputy Marshal Chambers and Deputy Sheriffs Klaser and Daza, Timas named as defendants two Vanderburgh County prosecutors, the county

clerk and her assistant, another county employee, the judge who presided over his state criminal case, his court-appointed lawyer, and 100 unnamed others. Timas claimed that Chambers, Klaser, Daza, and the unnamed defendants arrested him without probable cause or a warrant, used excessive force during his arrest, and searched him illegally. He further claimed malicious prosecution and that each individual involved in his arrest and prosecution conspired to falsify information in order to convict him.

The district court screened Timas's complaint pursuant to 28 U.S.C. § 1915A(b) and dismissed his claims for malicious prosecution and obstruction of justice after concluding that the defendants were immune from suit on various grounds. The court further dismissed Timas's illegal arrest and search claims as barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The court did permit Timas's only remaining claim—the excessive force claim against Chambers, Klaser, and Daza—to proceed.

In March 1999, before any of the defendants had responded, Timas filed his First Amended Complaint, raising anew the claims dismissed in his original complaint, as well as adding the Vanderburgh County Sheriff's Department and Vanderburgh County as defendants to his excessive force claim, ostensibly under *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But the district court struck Timas's amended complaint, reasoning that "submission of an amended complaint ... is ineffective as a means of obtaining reinstatement of the claims which have already been dismissed." The court observed that "[a]n amendment through which the plaintiff proposes to assert claims against new parties ... requires leave of court." The court added, however, that Timas still had the opportunity to amend his complaint once as a matter of course before the defendants filed responsive pleadings, but that any amendment "must be limited to the claims which survived the screening under § 1915A." Timas responded in April 1999 by moving for leave to amend his complaint, and the district court advised him that it would screen his proposed amended complaint pursuant to § 1915A(b). The court further ordered the defendants to treat the original complaint as controlling during the screening process. The court, however, did not rule on Timas's motion to amend his complaint until almost a year later when it denied the request as futile.

The action then proceeded as to Chambers, Klaser, and Daza, all of whom moved for summary judgment. The district court granted Daza's motion, but denied summary judgment as to Chambers and Klaser. The court held that Timas had failed to refute Daza's evidence that he never physically touched Timas and was in a different part of the apartment when other officers allegedly used excessive force in arresting Timas. Klaser subsequently settled, and only Chambers went to trial. At the close of Timas's case-in-chief, the court granted judgment as a matter of law for Chambers. The court explained that Timas's evidence would not permit a jury to "find that the physical force applied to Mr. Timas was objectively unreasonable under the circumstances" because the officers, given their information that Kevin Smith was a cocaine dealer who, along with his associates, was likely to be armed, "were justified in treating all occupants in the apartment as potential threats until they were physically secured, cuffed and under the control of law enforcement." Having thus disposed of all claims against all defendants, the court entered final judgment, and Timas filed a timely notice of appeal.

■ On appeal Timas first argues that the district court erred in refusing to allow him to amend insofar as he sought to add a claim that the putative defendants (including those dismissed pursuant to the district court's § 1915A screening) conspired to obstruct justice and deny him access to the courts by framing him on the drug charges. We hold that the district court did not err in striking Timas's first amended complaint or in denying leave to file his second because in both instances Timas's proposed amendments would have been futile.

■ Under Federal Rule of Civil Procedure 15(a) a plaintiff may amend his complaint once "as a matter of course at any time before a responsive pleading is served"; at any other time "leave [to amend] shall be freely given when justice so requires." Timas invoked his right to file an amended complaint as a matter of course, first, when he filed his amended complaint in March 1999 and, later, when in April 1999, he sought leave to amend after the district court had struck his first amended complaint. *See Stewart v. RCA Corp.,* 790 F.2d 624, 631 (7th Cir.1986) (where plaintiff has not yet amended his complaint and mistakenly believes that he must seek leave to do so even though no responsive pleading has been filed, district court obliged to "grant this unnecessary request" and allow amendment). This right to amend as a matter of course survives a grant of a motion to dismiss, *see Perkins v. Silverstein,* 939 F.2d 463, 471 (7th Cir.1991), which is analogous to a district court's sua sponte dismissal for failure to state a claim under 28 U.S.C. § 1915A, *see Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000). But a plaintiff's right to amend as a matter of course is not absolute. *Perkins,* 939 F.2d at 471–72; *Textor v. Bd. of Regents of N. Ill. Univ.,* 711 F.2d 1387, 1391 n.1 (7th Cir.1983). Even where a plaintiff retains the right to amend once as a matter of course, "a district court may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading," or if it "could not survive" a motion to dismiss. *Perkins,* 939 F.2d at 472. In *Perkins* we noted that "[t]o hold otherwise would impose upon the defendants and the courts the arduous task of responding to an obviously futile gesture on the part of the plaintiffs" and "Rule 15(a) does not require the courts to undertake such an exercise." *Id.*

In this case the district court twice determined that Timas's proposed revival and expansion of his "joint action conspiracy" theory would be futile. *See Williams v. United States Postal Serv.,* 873 F.2d 1069, 1072 (7th Cir.1989). The court noted that several new counts in Timas's amended complaints essentially reasserted a like conspiracy claim originally dismissed under § 1915A. For example, Timas's first amended complaint included counts of "Abuse of Process," "Conspiracy to Interfere with Civil Rights," and "Denial of Equal Rights under the Law" that named the same parties and repeated conspiracy allegations that were substantively identical to those in his "Malicious Prosecution" and "Conspiracy to Obstruct Due Course of Law" counts dismissed from the original complaint. But artful renaming could not cure the deficiency on which the district court initially dismissed—namely, that each defendant was protected by absolute or qualified immunity. *See Ross v. United States,* 910 F.2d 1422, 1427 (7th Cir.1990) (despite plaintiff's attempt to recharacterize the facts, the amended complaint remained legally insufficient and was properly rejected). Accordingly, the district court did not err in refusing to permit Timas to amend his complaint.

■ Next Timas argues that the district court erred in granting summary judgment to Deputy Sheriff Daza. Timas

theorized that Daza violated his Fourth Amendment rights when he failed to intervene and stop the mistreatment at the hands of Chambers and Klaser. Omissions can violate civil rights, and "under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir.2001) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994)). An officer presented with a realistic opportunity to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 for failing to act if the officer had reason to know that: (1) excessive force was being used; (2) a citizen was unjustifiably arrested; or (3) a constitutional violation was being committed by another law enforcement official. *Chavez*, 251 F.3d at 652; *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir.1997).

■ Timas's apparent premise is that Chambers and Klaser used excessive force during his arrest, and that Daza had a realistic opportunity to stop them. But Daza averred that when he entered the apartment he immediately went to the back to locate Smith; he also insisted that he played no role in Timas's arrest. As the district court noted, "Daza could not have seen and intervened in anything Chambers and Klaser were doing when he was in a different area of the apartment engaged in a different task." Timas did not come forward with evidence disputing Daza's account. Thus the district court properly held that Timas failed to create a material fact dispute about Daza's role in his arrest.

Finally, Timas argues that the district court erred in granting judgment for Chambers at the conclusion of Timas's case-in-chief. We review *de novo* the grant of a motion for judgment as a matter of law made pursuant to Federal Rule of Civil Procedure 50(a). *See Massey v. Blue Cross–Blue Shield*, 226 F.3d 922, 924 (7th Cir.2000). Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed R. Civ. P. 50(a); *see also Murray v. Chicago Transit Auth.*, 252 F.3d 880, 886 (7th Cir.2001). The standard for granting judgment as a matter of law "mirrors" the standard for granting summary judgment. *Murray*, 252 F.3d at 886–87; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, as we examine the record in its entirety, we view the evidence in the light most favorable to Timas. *See Massey*, 226 F.3d at 924.

■ The Fourth Amendment protects citizens against the use of excessive force during an arrest. *See Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether excessive force was used is evaluated under the "objective reasonableness" standard, through which courts assess whether the actor's actions were objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865; *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir.2001). We consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. We also consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. *See Jacobs v. City of Chica-*

**580**

*go,* 215 F.3d 758, 773 (7th Cir.2000). Ultimately, the excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended." *McDonald v. Haskins,* 966 F.2d 292, 294 (7th Cir.1992); *see also Lanigan,* 110 F.3d at 475.

 We agree with the district court that the trial evidence could not have supported a jury finding that Chambers used excessive force in arresting Timas. The district court noted that, under the totality of the circumstances, Chambers and the other officers were justified in using a modicum of force to subdue the occupants of the Evansville apartment. According to the intelligence the officers had gathered, Kevin Smith was a dangerous felon who was currently involved in cocaine trafficking. They knew that Smith and his associates were likely to be armed, and that his associates would not hesitate to protect Smith. The officers had a valid arrest warrant for Smith, which they planned to execute at night inside a darkened apartment. The court concluded that the officers were entering a dangerous situation in which they were entitled to treat everyone inside as a potential threat. Under these circumstances, the Fourth Amendment permits officers to conduct a protective sweep to secure the premises and its occupants. We agree that the evidence supports the single conclusion that the amount of force employed by Chambers and the others was commensurate with the risk they faced. Accordingly, Timas failed to establish a legally sufficient basis for a reasonable jury to conclude that Chambers violated his Fourth Amendment rights, and

the district court's Rule 50(a) judgment was proper.

AFFIRMED.