# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

Nos. 03-2038, 03-2070 & 03-3011

MOMCILO FILIPOVICH,

*Plaintiff-Appellee, Cross-Appellant*,

*v.*

K&R EXPRESS SYSTEMS, INC.,

*Defendant-Appellant, Cross-Appellee.*

————————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 4610—**Joan Humphrey Lefkow**, *Judge.*

————————

ARGUED APRIL 5, 2004—DECIDED DECEMBER 7, 2004

————————

Before BAUER, POSNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Convinced that his employer, K&R Express Systems, Inc., has been discriminating against him on various grounds prohibited by Title VII 42 U.S.C. §§ 2000e, *et seq.*, Momcilo Filipovich has sued the company several times. In the present case, he alleges that K&R discriminated against him on the basis of age and national origin and that it unlawfully retaliated against him for bringing his earlier complaints.

That earlier litigation began in 1995, when Filipovich sued K&R based on charges he filed with the EEOC in 1993 and 1994 complaining about discrimination on the basis of national origin and retaliation. See *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 392-93 (7th Cir. 1999). Before that case was concluded in K&R's favor (in fact, just fifteen days after the district court dismissed the lawsuit) Filipovich filed another charge with the EEOC. This one claimed that the company had discriminated against him in a variety of ways, all on account of his age or national origin or because he had filed a charge. On April 27, 1998, the EEOC issued a notice of right to sue, and on July 27, 1998, Filipovich filed this lawsuit. The district court dismissed several of Filipovich's claims at the summary judgment stage, but the age discrimination and retaliation claims went to the jury. The jury found for Filipovich on both claims and awarded compensatory and punitive damages. After trial, however, the district court granted judgment as a matter of law to K&R on the age discrimination claim, finding that Filipovich failed to demonstrate that he was similarly situated to any younger employee who was treated more favorably. The court upheld the retaliation claim but remitted the punitive damages. K&R appealed from the verdict in Filipovich's favor, contending that there is insufficient evidence to support it; Filipovich cross-appealed from the judgment as a matter of law on the age claim and the elimination of his punitive damage award. We find that K&R has the better of the argument on all aspects of the case: we therefore reverse the judgment in Filipovich's favor on the retaliation claim, and we affirm the judgment for K&R on the remainder of the case.

# I

Filipovich is a 62-year-old man from the former Yugoslavia who works for K&R Express Systems, a regional trucking

company. Filipovich works at K&R's main terminal in Hinsdale, Illinois, and is a member of Local Union No. 710 of the International Brotherhood of Teamsters. Filipovich is, and was, a dockman for K&R. His responsibilities include loading and unloading freight on trucks and trailers. Filipovich has worked as a full-time dockman since 1982.

After fifteen years working only as a dockman, Filipovich sought a promotion to the position of "spotter." A spotter is responsible for moving trailers between various loading docks. Filipovich considered such a promotion "very big." The spotter position carried greater pay and certain weekend work assignments not available to dockmen. Additionally, driving a trailer is much easier on a person physically than is loading and unloading freight.

Spotter positions do not open up regularly. When the company expects openings, it posts a sign-up sheet. In order to be chosen and trained as a spotter, an interested employee must sign up. He must then take and pass a road test, which is designed to ensure that the person knows how to drive a trailer. Filipovich signed up for a spotter position, but he failed the road test twice. Scott Weigand, K&R's safety manager and the person in charge of spotters, met with Filipovich twice to train him on driving the trailers. Weigand then told Filipovich that he had to proceed to a "second stage" of training before he could take a qualification test. Weigand, however, never met with Filipovich again, and Filipovich was given neither another road test nor the qualification test. Although Filipovich again signed the sheet indicating his interest in the position, he was never again contacted about becoming a spotter.

Filipovich suspected that he was not selected as a spotter because he was thought to be too old. In late 1997, he filed an EEOC charge to this effect. Following the filing of his charge, Filipovich began to receive disciplinary letters, warning him of problems with his loading, unloading, and

securing of freight. Filipovich received eight such letters between May 1998 and December 1999. As a result of the letters, Filipovich received two suspensions, one in November 1998, the other in December 1999. Filipovich did not have to serve the December suspension, as it was successfully reversed by his union.

Filipovich filed suit on July 27, 1998, alleging discrimination based on his age and national origin and retaliation against him for his prior complaints. The court granted K&R's summary judgment motion directed to the national origin claims and most of the age discrimination claims, but it allowed Filipovich to proceed on the claim that the denial of the promotion to the spotter position was on account of either his age or the company's desire to retaliate against him. At trial, Filipovich introduced evidence documenting Weigand's refusal to train him further on driving the trailers, and Weigand's refusal to explain what the "second stage" of training was supposed to be. Filipovich testified that he trained extensively on his own and felt ready to take a third road test, but that he was never allowed to do so. Filipovich also claimed that he had not committed any of the infractions for which he had been disciplined.

K&R argued that it refused to promote Filipovich to a spotter position because he failed the test twice, and because even after training sessions with Weigand, he still could not safely maneuver the trailers. K&R pointed out in its Rule 50 motion that Filipovich failed to show that he was as qualified as those dockmen who were promoted, or that there were similarly situated dockmen who received more extensive training. K&R emphasized that there is no official training program in place to teach dockmen how to drive the trailers, and that Weigand's attempts to teach Filipovich were out of the ordinary.

In response to the retaliation claim, K&R testified that its shipping manifests, which contain the records of all freight being loaded and unloaded, documented all of Filipovich's

errors. In the normal course of its business, a dockman signs a manifest and notes on the manifest what freight he has handled. On September 18, 1998, K&R issued a letter to Filipovich outlining his failure to unload 39 pieces of a 460-piece shipment. The shipment was destined for Michigan, but the 39 pieces were left on a trailer heading for Missouri. Filipovich claimed that the shipping manifest indicated that all 460 pieces were to be left on the trailer, but he admitted unloading the 421 pieces and then circling the shipment on the manifest, which was a way of indicating that he had unloaded the entire 460-piece shipment. Each of the disciplinary letters arose out of similar circumstances. Filipovich introduced nothing to suggest that other dockmen did not receive letters when they committed comparable errors.

The jury nonetheless returned a verdict in Filipovich's favor on both claims. It awarded him damages of $1,200 in back pay on the age discrimination claim and $300 in back pay on the retaliation claim, as well as $126,423 in punitive damages. K&R filed a Rule 50 motion, which the district court granted with respect to the age discrimination claim. The district court upheld the jury verdict on the retaliation claim, but it reduced the punitive damage award to $25,000.

## II

We review *de novo* the district court's decision to deny K&R's motion for judgment as a matter of law. See *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578 (7th Cir. 2003). Following a jury trial, we do not re-weigh evidence, nor do we make credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Our job is to assure that the jury had a legally sufficient evidentiary basis for its verdict. *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000). A legally sufficient amount of evidence need not be

overwhelming, but it must be more than a "mere scintilla*."*
*Id.* Like our review of a summary judgment motion, we
examine all the evidence in the record in the light most
favorable to the party against whom the court granted
judgment. See *Cygnar v. City of Chicago*, 865 F.2d 827, 834
(7th Cir. 1989). Unlike our review of a summary judgment
motion, however, review of a Rule 50 motion proceeds on
the basis of the evidence the jury actually had before it. We
will overturn a jury verdict only if, after reviewing that
evidence, it is clear that the plaintiff failed to present
enough evidence to support her claim. *Massey*, 226 F.3d at
924.

At the trial, the question was whether Filipovich pre-
sented enough evidence to permit the jury to conclude that
he was the victim of discrimination. See *Massey*, 226 F.3d
at 925. It is not, as the parties mistakenly assume in their
briefs, whether Filipovich established all the elements of
the *prima facie* case outlined in the *McDonnell Douglas v.
Green* line of cases. *Id.* "The *McDonnell Douglas* framework
is designed to help plaintiffs raise an inference of discrimi-
nation during pretrial proceedings. After the trial on the
merits, the burden-shifting apparatus has served its
purpose and the required preliminary showings fall away."
*Diettrich v. Northwest Airlines, Inc.*, 168 F.3d 961, 965 (7th
Cir. 1999). If Filipovich presented enough evidence to allow
a rational jury to find that he was the victim of discrimina-
tion, the verdict must stand.

Although we do not overturn a jury verdict lightly, that
does not mean that all jury verdicts must be affirmed. If, for
example, the evidence presented at the summary judgment
stage does not materialize at trial for some reason or
another, and the party seeking to reach the jury introduces
nothing else in its place, the court would have a duty to
grant a Rule 50 motion for the other side even if it had
correctly denied summary judgment. We are obliged to give
the same careful review to the evidence that we use at the

summary judgment stage, looking at the evidence that was presented at trial and taking all reasonable inferences in the light favoring the opponent of the motion. Here, after examining the evidence presented at trial, we agree with the district court that Filipovich did not present enough evidence to allow the jury to find in his favor. Further, for the reasons we explain below, we find that his retaliation claim must fail as well.

**A**

Filipovich had two theories of age discrimination: either K&R discriminated against him on the basis of his age by refusing to train him or it did so by refusing to allow him to take a road test. Filipovich testified that Weigand trained him twice, but then Weigand refused to train him again or to allow him to take a third road test (after he failed the first two). Filipovich says that the refusal to continue training him was discriminatory. But Filipovich was not able to identify any younger dockmen that Weigand did train. K&R representatives testified to the contrary that it was their policy *not* to train anyone. Thus, if Filipovich received different treatment at all, it appears that he was given more favorable treatment than the other dockmen who were seeking spotter positions. Although Filipovich may believe that Weigand made that decision on account of Filipovich's age, Filipovich failed to present any evidence that would suggest such an inference is appropriate.

Filipovich points out that witnesses at trial disputed K&R's claim that Filipovich himself abandoned training, testifying that they saw Filipovich practicing alone, or that they heard Filipovich repeatedly try to continue training with Weigand. Even if the jury believed that Filipovich was demonstrating diligence in this respect, however, this evidence says nothing about the reason for K&R's refusal to continue providing Filipovich with formal training. Nor was

there any evidence that K&R refused to allow Filipovich to take a third road test because of his age. It was undisputed that Filipovich had failed the road test twice. K&R witnesses testified that in light of his continued poor performance during training, it would have been futile to allow Filipovich to take a third test. Even if the jury chose to disbelieve all of K&R's explanations, Filipovich provided no alternative that suggested discrimination. Merely disbelieving the employer's explanation cannot sustain a jury verdict. Accordingly, the grant of judgment as a matter of law to K&R was correct.

**B**

Filipovich's retaliation claim faces similar difficulties. K&R sent Filipovich eight disciplinary letters between May 1998 and December 1999. Filipovich contends that the letters were sent in retaliation for his filing a charge with the EEOC. K&R witnesses testified at trial that each letter was written in response to a mistake made by Filipovich in his loading or unloading of freight. The evidence showed that the normal procedure at K&R is to keep a manifest for each trailer being loaded or unloaded. Each piece of freight or collection of freight is listed on the manifest. The dockman loading the trailer circles each piece of freight as he loads it, marking on the manifest if the freight is damaged, is missing, or is missing a shipping label. Any problem with the shipment should be noted on the manifest by the dockman. If there is a dispute with the shipper or consignee, K&R uses the manifest to prove which problems with the freight existed before the freight reached K&R. If freight arrives at K&R's facility in a damaged condition, but it is not marked as such, the consignee has the right to sue K&R for the damaged freight. In that event, K&R must absorb the cost of the damages itself. From K&R's standpoint, therefore, it is crucial that the manifests are accurate.

K&R established at trial that the manifests are business records. The manifests at issue in each disciplinary letter were admitted into evidence. In each instance, Filipovich was the dockman responsible for the freight that was mishandled. K&R also introduced evidence showing that it was company policy to send disciplinary letters any time a dockman made such a mistake.

On direct examination, Filipovich offered the following testimony about the letters:

Q:  Now the various mistakes that have been alleged in these letters, did you commit them?

A:  No.

On cross-examination, Filipovich was more forthcoming. For example, in response to the warning letter prompted by his act of leaving 39 pieces of the 460-piece shipment on a trailer, Filipovich explained that he had been directed to leave the entire 460-piece shipment on the trailer. It is unclear to us why he thought that explanation would help matters, as it implies that he mistakenly removed 421 pieces and put them somewhere where they should not have been. The manifest showed that Filipovich had circled the entire shipment, which signified that he had unloaded all 460 pieces and directed them to their proper destination. Filipovich admitted that he did not "have a clue" as to why he would leave 39 pieces behind or, if he did not unload the shipment, why he circled it on the manifest. Instead, Filipovich resorted to a bare denial, claiming that "[t]his is [a] totally false letter."

Filipovich's responses and explanations for the other letters were similar. In response to a letter warning him for leaving one piece of a fifteen-piece shipment on the dock, Filipovich explained, "That document maybe is falsified." In each instance, Filipovich failed to offer any plausible alternative theory for the mistakes. Nor did Filipovich offer any evidence to show that K&R's manifest system was open

to falsification or manipulation. Filipovich also presented no evidence indicating that K&R implemented its disciplinary system in a discriminatory manner. There is nothing to suggest, for example, that K&R failed to discipline other dockmen for similar mistakes or that K&R sent letters to Filipovich for infractions that usually did not merit a letter. Instead, Filipovich testified only that he suspected that K&R had made things up.

The district court, in upholding the jury's verdict, found that the jury "was obviously persuaded by Filipovich's slant of events." *Filipovich v. K&R Express Systems, Inc.*, 2003 WL 1463531, *7 (N.D. Ill. 2003). The problem is that Filipovich had no "slant of events." Filipovich did not offer a story which the jury could choose to believe. He offered only a bald assertion that K&R was lying. Although Filipovich held steadfastly throughout the trial to his claim that he did not commit any of the offenses, the testimony he offered cannot overcome the documented proof of his responsibility.

Filipovich bore the burden of proof, meaning that he had to demonstrate that K&R retaliated against him because of his EEOC charge. In his briefs, Filipovich claims that K&R failed to offer "a shred of testimony or other evidence from any witness to establish that Filipovich had in fact committed the offenses set forth in the letters." K&R's letters themselves, however, were the proof that (at a minimum) K&R thought that Filipovich had committed the offenses. It was then up to Filipovich to explain why that was not possible, or to explain how someone else might have been responsible, or why K&R never would have disciplined anyone else for such offenses. Filipovich offered neither testimony nor evidence suggesting that K&R had no basis in fact for the warnings.

Filipovich's denials alone, in the face of K&R's documentation that he was the dockman responsible for the freight

when it was mishandled, were not enough to justify submitting this case to the jury. See *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860 (7th Cir. 1996) (finding summary judgment appropriate where the plaintiff submitted only his own testimony in an attempt to combat documented evidence of his poor performance). Equally devastating to his case was his failure to show that the letter writers knew that he had filed an EEOC charge. In asking the jury to find in his favor based only on his denial of responsibility and the fact that he had filed an EEOC charge months earlier, Filipovich asked too much. Simply put, we cannot find a shred of evidence here suggesting that K&R acted on the basis of a retaliatory motive.

Because Filipovich failed to meet his burden of proof, we must reverse the district court and grant K&R's motion for judgment as a matter of law on the retaliation claim.

## III

Filipovich was required to show that it was more likely than not that K&R discriminated against him or retaliated against him. An objective review of the evidence shows that he failed to accomplish this task. We therefore AFFIRM the district court's grant of judgment as a matter of law in K&R's favor on the age discrimination claim and REVERSE the district court's denial of judgment as a matter of law for K&R on the retaliation claim. Because we are reversing the retaliation claim, we also vacate the remaining award of punitive damages and the attorneys' fees the court awarded to plaintiff's counsel.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*